IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CV-395-F

ONYEDIKA C. NWAEBUBE, )
)
Plaintiff, )
)
v. )          **MEMORANDUM AND**
)          **RECOMMENDATION**
EMPLOYMENT SECURITY )
COMMISSION OF NORTH CAROLINA, )
)
Defendant. )

This matter is before the court on Defendant's motion for summary judgment. [DE-22].

Plaintiff has responded to Defendant's motion, Defendant has replied and Plaintiff has filed a

permissible surreply; accordingly, the matter is ripe for disposition. The parties have not consented

to jurisdiction of the magistrate judge; therefore, the motion is considered here as a recommendation

to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). For the

reasons set forth below, it is recommended that Defendant's motion for summary judgment be

denied.

## I. PROCEDURAL HISTORY

Defendant Employment Security Commission of North Carolina ("Defendant" or "the

Commission") removed this action, initiated by complaint filed in Wake County Superior Court on

10 August 2009, to this court on 3 September 2009. Plaintiff Onyedika C. Nwaebube ("Plaintiff")

alleges that Defendant failed to promote him because of his race and national origin in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Compl. ¶ 35 [DE-

1.1]. Defendant filed its Answer [DE-11] on 8 September 2009, generally denying the allegations

and raising several affirmative defenses. On 12 November 2010, Defendant moved for summary judgment [DE-22].[1] On 3 December 2010, Plaintiff filed a Response [DE-24] in opposition to Defendant's motion. Pursuant to the court's directive on 4 January 2011, Defendant filed a Reply [DE-31] on 21 January 2011, to which Plaintiff was permitted to file a Surreply [DE-32] on 28 January 2011.

## II. STATEMENT OF FACTS

Plaintiff is an African-American male and naturalized American citizen originally from Nigeria with a Bachelor of Arts degree in public administration and a masters degree in public administration and management. Compl. ¶¶ 8, 31. Plaintiff began working for the Commission in September 1999 as a Program Assistant V in the Legal Services Department. Nwaebube Aff. ¶ 3 [DE-24.1]. In April 2000, Plaintiff was promoted to his present position of Administrative Assistant I/Accounting Technician III[2] in the Budget Services Unit of the Finance and Budget Department ("the Department"). Nwaebube Aff. ¶ 4 [DE-24.1]; Nwaebube Dep. 9:11-19; Ex. 34 [DE-24.8]; Ex. 37 [DE-23.7].

In 2008, the year in which the alleged discriminatory action took place, Kevin Carlson ("Carlson"), white, native-born American, served as Director of the Department and oversaw 33

---

[1] Defendant initially filed the motion for summary judgment and supporting documentation as one docket entry. [DE-21]. Subsequently, Defendant timely refiled the motion for summary judgment as an entry separate from the memorandum of law and supporting exhibits. [DE-22, DE-23]. Because the original docket entry is duplicative of the subsequent filing, the court recommends that the original motion [DE-21] be DENIED AS MOOT.

[2] In March 2008, the Commission reclassified the administrative assistant I position as accounting technician III to better reflect the job duties required thereby. Parker Dep. 19:10-18, 20:9-16 [DE-23.5]; Ex. 37 [DE-23.5]. Plaintiff testified that the reclassification did not alter his job duties. Nwaebube Dep. 9:20-24 [DE-23.4], 10:11-13 [DE-24.2].

employees: 1 Asian female, 1 black male, 12 black females, 2 Hispanic females, 2 white males and 15 white females. Carlson Aff. ¶¶ 1-2, 4; Parker Dep. 15:16-25 [DE-23.5]; Ex. 34 [DE-23.7]. Laura Parker ("Parker"), manager of the Department's Budget Services Unit ("the Unit"), supervised four positions, including Plaintiff's and that of Larry Cuthbertson ("Cutherbertson") and Joy Parks ("Parks"), both ES Operations Analysts ("operations analyst").[3] Parker Dep. 11:3 [DE-24.4], 13:18-19 [DE-23.5], Ex. 34 [DE-24.8].

On 22 January 2008, Cuthbertson tendered his letter of resignation from the operations analyst position, effective 8 February 2008, in light of his acceptance of an offer of employment with the North Carolina Division of Motor Vehicles ("NCDMV"). Cuthbertson Dep. 21:23-24 [DE-23.3]; Ex. 12 [DE-23.7]; Ex. 13 [DE-23.7]. On 30 January 2008, the Commission posted internal to the agency the position of operations analyst, from which Cuthbertson had resigned. Ex. 28 [DE-24.8]; Parker Dep. 23:19-25, 24:8-10 [DE-23.5]. Parker chose to advertise initially within the Commission to allow its employees the opportunity for promotion. Parker Dep. 24:8-9 [DE-23.5]. The posting noted the minimum education requirements, provided a job description and noted that preference would be given "to candidates with knowledge of the WIA [i.e., Workforce Investment Act] and Trade programs, Finance & Budget and FARS."[4] Ex. 28 [DE-24.8]. The closing date for receipt of

---

[3] While listed as "ES operations analyst," the position is commonly referred to as "budget analyst." Perry Dep. 9:17-25 [DE-24.6].

[4] The operations analyst position, *inter alia*, "prepares and manages financial budgets and monitors operations of the Commission's WIA and Trade programs[;] . . . develops and justifies Federal budget requests . . . ; authorizes program administrative expenditures [and] establishes methods for monitoring financial operations of the programs . . . ." Ex. 28 [DE-24.8]. Education requirements include a college degree in accounting or business administration and accounting/auditing experience in the preparation of interpretive or analytical accounting/financial statements and reports. *Id.*

3

applications for this position was 8 February 2008. Williams Dep. 27:21-23 [DE-24.5]; Ex. 28 [DE-24.8].

On 25 February 2008, the Commission's Human Resources Department ("HR") issued an Applicant Register to Parker for the operations analyst position, which listed three applicants – Plaintiff and two black females. Parker Dep. 26:3-12 [DE-23.5]; Ex. 31 [DE-24.8]. All applicants were considered "highly qualified" for the operations analyst position. Ans. ¶ 13 [DE-5]. On or about 1 March 2008, finding that none of the applicants "ha[d] substantial hands-on budgeting experience or analysis experience," and only one applicant had "WIA and Trade knowledge," Parker, with Carlson's approval, made the decision to repost the position in order to expand the applicant pool. Parker Dep. 26:18-25, 27:1-2, 14-19, 28:22-23 [DE-23.5]. Parker testified that she discussed the applications with Carlson and that they made the decision to repost the position. *Id.* at 27:1-2, 28:6-14.

Subsequent to Cuthbertson's resignation and prior to reposting the operations analyst position, there were a few occasions in February and March 2008 where Parker and Cuthbertson discussed the possibility of Cuthbertson returning to the Commission. According to Cuthbertson, the first discussion took place on 8 February 2008, where Parker "kiddingly" inquired as to Cuthbertson's interest in returning to the Commission to which Cuthbertson responded in the negative.[5] Cuthbertson Dep. 27:2-8, 28:2-7 [DE-23.3]. Sometime thereafter, according to

---

[5] While Parker testified to the contrary, stating no such discussion took place on 8 February 2008, *see* Parker Dep. 30:14-18 [DE-24.4], in its memorandum, the Commission adopts the testimony of Cuthbertson. Def.'s Mem. at 6.

4

Cuthbertson, Parker contacted him regarding the possibility of returning to the Commission.[6] Cuthbertson Dep. 26:23-24 [DE-24.3], 27:2-7 [DE-23.3]. However, on 4 March 2008, Cuthbertson emailed Parker, hoping she had not "proceeded very far" regarding his return to the Commission. Ex. 14 [DE-23.7]. Cuthbertson explained that due to a recent financial setback, he needed to remain at DMV which paid a salary exceeding that of his former position as an operations analyst with the Commission. Ex. 14 [DE-23.7]. Cuthbertson concluded the email with "I hate this happened but under the circumstances I don't see any way that I can now return to the ESC. My apologies!!!" Ex. 14 [DE-23.7].

On 27 March 2008, the Commission again posted the operations analyst position with a closing date of 8 April 2008. Ex. 32 [DE-23.7]. Applicants from the initial posting would be considered and were not required to resubmit an application. Ans. ¶ 16. The reposting was expanded to include current state government employees. Ans. ¶ 16. According to Parker, the decision to readvertise the position was made "probably the first of March" after reviewing the applications, Parker Dep. 28:4-5, 17-25 [DE-23.5], and prior to learning of Cuthbertson's interest in returning to the Commission. *Id.* at 35:14-16 [DE-23.5].[7] On 1 April 2008, Cuthbertson submitted a timely application for the position. Ex. 12 [DE-23.7]. At some point thereafter, but prior to 2 May 2008, Zanetta King, an HR employee, asked Cuthbertson to submit an educational

---

[6] In deposition testimony, Parker stated that Cuthbertson initiated the discussion regarding his possible return to the Commission. Parker Dep. 29:13-22 [DE-24.4]. In its memorandum, however, the Commission adopts the testimony of Cuthbertson. Def.'s Mem. at 6.

[7] It was not until 21 March 2008, well after the decision to readvertise the operations analyst position, Parker Dep. 28:4-5, 17-25 [DE-23.5], that Cuthbertson emailed Parker, explaining he was "ready to talk seriously about returning to [the Commission]." Ex. 15 [DE-24.8].

5

transcript indicating he had taken twelve semester hours of accounting – listed in the posting as a minimum education requirement.[8] Cuthbertson Dep. 35:1, 36:13-24 [DE-23.3]; Ex. 32 [DE-23.7]. Upon responding that the information was in his personnel file, Cuthbertson was advised by King that his file had been transferred to DMV.[9] Cuthbertson 35:9-12 [DE-23.3]; Williams Dep. 21:20-21 [DE-23.6]. On 2 May 2008, Cuthbertson advised King via email that he had ordered a copy of his transcript from East Carolina University and that HR should receive it the following week. Ex. 16 [DE-23.7]. That same day, HR issued two Applicant Registers for the operations analyst position. Williams Dep. 32:3-22 [DE-24.5]; Ex. 29 [DE-23.7]; Ex. 33 [DE-24.8]. One register listed five internal applicants and one external applicant and did not list Cuthbertson. Ex. 33 [DE-24.8]. The second register listed the same names as the first but also included Cuthbertson. Ex. 29 [DE-23.7]; Williams Dep. 33:1-4 [DE-24.5]. In deposition testimony, Renee Williams ("Williams"), a personnel analyst with HR, explained the register containing Cuthbertson's name should not have been printed because as of the print date, HR had not verified Cuthbertson's credentials. Williams Dep. 5:6-7 [DE-23.6], 33:3-10 [DE-24.5]. In particular, HR had not yet verified that Cuthbertson satisfied the minimum education requirements. Williams Dep. 20:17-19, 21:5-6 [DE-24.5]; Ex. 32 [DE-23.7].

---

[8] During that same time period, the Commission sent Cuthbertson a letter, in error, stating that he was not being considered for the operations analyst position. Def.'s Reply at 4; Ex. C, Def.'s Resp. Pl.'s Req. Admis. No. 3 [DE-31.4]; Ex. 57 at 10 ¶ 30 [DE-24.3]. During deposition testimony, Cuthbertson stated that he did not recall receiving such a letter. Cuthbertson Dep. 35:3-12 [DE-23.3]. Lynn Floyd ("Floyd"), HR manager for the North Carolina Office of State Personnel ("OSP"), explained in affidavit testimony that an applicant rejected for a position in error may move forward in the recruitment and selection process. Floyd Aff. ¶¶ 9-10.

[9] Williams testified that when a North Carolina state employee leaves one state agency to work for another, the employee's personnel file is transferred to the new employer. Williams Dep. 20:24-25 [DE-24.5], 21:1-3 [DE-23.6].

6

On 27 May 2008, in an email exchange between Williams and Parker, Williams explained that HR was "still holding the register" for the operations analyst position because HR had not yet received Cuthbertson's transcript.[10] Williams Dep. 21:9-13 [DE-23.6]; Ex. 25 [DE-24.8]. Williams advised further that King had previously confirmed that Cuthbertson intended to follow-up on his earlier transcript request. Ex. 25 [DE-24.8]. Williams then asked whether HR should continue holding the position to which Parker responded in the affirmative. *Id.* Floyd explained in affidavit testimony that "an applicant can be given an opportunity to submit a transcript after the closing date for receipt of application on a job posting, without violating OSP policy, where [as here] the job posting did not inform applicants of the requirement to submit a transcript and all applicants who did not submit a transcript are given the same opportunity to do so." Floyd Aff. ¶¶ 1, 10.

Upon reviewing the applications, Parker chose to interview four applicants, including Plaintiff and Cuthbertson. Ex. 45 [DE-23.9 at 6]. The interview was conducted on 11 June 2008 by a four member panel which consisted of Parker and Commission employees Virginia Eagles, Cathy Koegl, both white, and Wayne Sanders, black. Nwaebube Dep. 65:14-15, 66:8 [DE-23.4]; Parker Dep. 42:3-19, 43:14-15 [DE-23.5]. In selecting the panel, Parker chose individuals who "had some form of interaction with [the operations analyst] position" and also "looked for individuals who didn't have a direct working relationship with [that] position." Parker Dep. 41:6-8, 17-20 [DE-23.5]. Each candidate was asked the same set of questions which had been prepared by Parker and approved by Carlson. *Id.* at 42:20-25, 43:1-5 [DE-23.5]; Ex. 38 [DE-23.8]. At the conclusion of the last interview, an open discussion was held among the panel members. Parker Dep. 50:1-7, 21-

---

[10] Williams explained via deposition testimony that "holding the register" meant HR "was not through preparing the register." Williams Dep. 21:16-17 [DE-23.6].

7

22 [DE-23.5]. The panelists unanimously ranked Cuthbertson as their top choice followed by Plaintiff. Ex. 42 [DE-23.9]; Ex. 45 [DE-23.9]. According to Parker, the "predominant factor" in the hiring decision was an applicant's "hands-on experience." Parker Dep. 52:1-11 [DE-23.5]. On 23 June 2008, the Commission offered, and Cuthbertson subsequently accepted, the position of operations analyst with an effective start date 1 July 2008.[11] *Id.* at 52:25, 53:1-2, 9-10.

On 11 July 2008, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), pursuant to Title VII of the Civil Rights Act of 1964, asserting that he "was not promoted to the Employment Security Operations Analyst position on account of his race and national origin." Compl. ¶ 36. On 17 July 2008, Plaintiff also filed a similar charge of discrimination with the North Carolina Office of Administrative Hearings ("OAH"). Nwaebube Supplemental Aff. ¶ 2 [DE-32.1]. On 12 May 2009, the EEOC issued a right to sue letter. Compl. ¶ 37.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates "that there is no genuine dispute as to any material fact," thus entitling the moving party to judgment as a matter of law. FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the moving party has carried its burden under Rule 56, the nonmoving party must do more than simply show that there is

---

[11] Plaintiff testified that the Commission's hiring decision was made prior to the 11 June 2008 interview, based in part on the erroneous belief that Cuthbertson's DMV position was advertised prior to 11 June 2008. Nwaebube Dep. 66:13-14, 68:9-13, 72:17-21 [DE-23.4]; Exs. 10, 18 [DE-23.7]. However, Cuthbertson did not resign from his position until 26 June 2008 with an effective date of 30 June 2008. Cuthbertson Dep. 43:8, 65:15-18 [DE-23.3]; Ex. 19 [DE-23.7]. Accordingly, the DMV advertisement relied upon by Plaintiff was not for the position performed by Cuthbertson. Cuthbertson Dep. 44:14-23, 45:1-7 [DE-23.3].

8

some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations & footnote omitted) (quoting FED. R. CIV. P. 56). The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. FED. R. CIV. P. 56(a); *see Anderson*, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## IV. APPLICABLE LAW

Title VII of the Civil Rights Act of 1964 makes it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Congress has expressly abrogated a state's Eleventh Amendment immunity for purposes of Title VII. *King v. McMillan*, 594 F.3d 301, 309 (4th Cir. 2010) (*citing Fitzpatrick v. Bitzer*, 427 U.S. 445, 448-49 (1976)). To survive summary judgment, a plaintiff may establish a claim of discrimination "through two avenues of proof" – the pretext framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or the mixed-motive framework. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004); *accord Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Regardless of the framework under which a plaintiff pursues a discrimination claim, "[t]he ultimate question in every employment discrimination

9

case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 153 (2000). In this case, Plaintiff has pursued his discrimination claim under both the pretext and the mixed-motive frameworks.

## V. ANALYSIS

### A.    McDonnell Douglas Framework

In *McDonnell Douglas,* the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). First, the plaintiff must establish a *prima facie* case of discrimination by a preponderance of the evidence. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The *prima facie* case varies depending on the factual nature of the claim. *See McDonnell Douglas*, 411 U.S. at 802 n.13; *Miles v. Dell., Inc.*, 429 F.3d 480, 486-87 (4th Cir. 2005); *Moore v. Charlotte*, 754 F.2d 1100, 1105 (4th Cir. 1985); *see also Diamond*, 416 F.3d at 318 (explaining "the elements of the prima facie case [are constructed] to give plaintiffs who lack direct evidence a method for raising an inference of discrimination."). If the plaintiff establishes a *prima facie* case, an inference of discrimination is raised and the burden shifts to defendant to produce admissible evidence that the defendant took adverse employment action "for a legitimate, non-discriminatory reason." *Burdine*, 450 U.S. at 254. If defendant carries its burden, the presumption of discrimination created by the *prima facie* case disappears from the case, and the plaintiff must then prove by a preponderance of the evidence that defendant's articulated reason was a pretext for unlawful discrimination. *See id.* at 253-55. In order for a plaintiff to demonstrate

10

pretext, he must prove "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves,* 530 U.S. at 143. At trial, this burden "merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256. A plaintiff can demonstrate pretext by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted).

1.    Plaintiff has established a *prima facie* case of race and national origin discrimination.

To prevail on his claims of discrimination, Plaintiff must establish that he was treated less favorably because of his race and national origin. To establish a *prima facie* case of discrimination in promotion under the *McDonnell Douglas* framework, the plaintiff must show that he (1) is a member of a protected group, (2) applied for the position in question, (3) was qualified for the position, and (4) was rejected under circumstances giving rise to an inference of unlawful discrimination.[12] *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005);

---

[12] Defendant contends that the employment act complained of by Plaintiff – the decision by Defendant to readvertise the operations analyst position – is not a cognizable "adverse employment action." Rather, Defendant argues the decision is a mediate or interlocutory decision because "[i]t did not have any immediate effect upon employment conditions" and "[i]t cannot be assumed that the plaintiff would have been promoted had the re-advertisement not occurred." Def.'s Reply at 8. Plaintiff responds that "the decision to re-advertise the position must be viewed in conjunction with the ultimate hiring decision." Pl.'s Surreply at 5.

To be sure, the existence of some adverse employment action is required in order to state a claim in a Title VII action. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). "An adverse employment action is a discriminatory act which "adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Id.* (internal quotations omitted). While "the typical requirements for a showing of an 'adverse employment action'" are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion," *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999), "[c]onduct short of ultimate

11

*Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). "The burden to establish a *prima facie* case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253.

It is not disputed that Plaintiff has satisfied the first three elements of the *prima facie* case by a preponderance of the evidence. Plaintiff, a naturalized African-American, is a member of a protected group. Moreover, Plaintiff applied for the budget analyst position at issue and Defendant has admitted that Plaintiff was "highly qualified." Ans. ¶ 13. Indeed, Parker's September 2008 memorandum to Carlson suggests the Commission would have hired Plaintiff had Cuthbertson declined the position. *See* Ex. 45 [DE-23.9] (recommending Cuthbertson as first choice and Plaintiff as second choice for the operations analyst position).

However, the parties dispute whether Plaintiff has satisfied the fourth prong of the *prima facie* case. Defendant argues that because Cuthbertson was "laterally placed" into the analyst position and thus "not [] promot[ed]," the hiring of Cuthbertson cannot give rise to an inference of discrimination. Def.'s Mem. at 16. Defendant thus implies that Cuthbertson and Plaintiff are not "similarly situated." However, to satisfy the fourth prong, a plaintiff need only show that the

employment decisions can constitute adverse employment action." *James*, 368 F.3d at 375-76 (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (rejecting the view "that nothing less than an 'ultimate employment decision' can constitute [an] adverse employment action"), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (internal quotation marks omitted)).

This court finds that the decision by Defendant not to hire from the initial pool of applicants but instead to repost the operations analyst position was an adverse employment action. In support of this position, the court observes that Plaintiff was the Commission's second choice for the operations analyst position. Ex. 45 [DE-23.9]. Secondly, the decision to readvertise ultimately "affected . . . [Plaintiff's] chances for promotion." *Fortner v. Kansas*, 934 F. Supp. 1252, 1267 (D. Kan. 1996) (noting adverse decisions include those that affected an employee's "chances for promotion"). Based on Parker's September 2008 memorandum to Carlson recommending Plaintiff as the second choice should Cuthbertson not accept the position, the evidence indicates that had the position not been reposted, thereby allowing Cuthbertson's application, Plaintiff would have been promoted.

12

position was filled by a person not in the protected class. *See, e.g., Burdine*, 450 U.S. at 253 n.6; *Carter*, 33 F.3d at 458 ("To satisfy the fourth prong, [plaintiff] need only show that the position was filled by a white applicant."); *see also Evans v. Tech Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (finding a female plaintiff's showing that a man was promoted rather than her satisfied this element for a sex discrimination claim); *Weaks v. North Carolina Dep't of Trans.*, __ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 7123, at *21, 2011 WL 208305, at *7 (M.D.N.C. Jan. 25, 2011) (African-American plaintiff satisfied the fourth prong of a refusal to promote *prima facie* case by showing that a Caucasian was offered the position for which he had applied). The operations analyst position was ultimately filled by Cuthbertson, a native-born American Caucasian. Thus, Plaintiff has established a *prima facie* case of discriminatory refusal to promote.

2.     Defendant has articulated a legitimate non-discriminatory reason for the selection of Cuthbertson.

In order to rebut the presumption of discrimination that arises when the plaintiff establishes a *prima facie* case, the defendant must "clearly set forth, through the introduction of admissible evidence, the [legitimate, nondiscriminatory] reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 254-55. At this stage, the defendant "need not persuade the court that it was actually motivated by the proffered reasons," as its burden is one of production rather than persuasion. *Id.* at 254. In other words, "the determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment[,] [f]or the burden-of-production determination necessarily precedes the credibility assessment stage." *St. Mary's Honor Ctr.*, 509 U.S. at 509.

13

Here, Defendant has offered a nondiscriminatory reason for its ultimate selection of Cuthbertson over Plaintiff and Plaintiff does not dispute the nondiscriminatory nature of Defendant's reason. Pl.'s Resp. 12. First, Defendant notes that Cuthbertson had previously held the position of operations analyst and "hands-on experience was a predominate factor" in the hiring decision. Def.'s Mem. at 17. Defendant notes also that Cuthbertson has thirty-six years of experience in various managerial positions and that his past experience "was not only of far greater duration than the plaintiff's, but involved work more closely aligned with the work description, knowledge, skills and abilities" of an operations analyst. *Id.* at 17-18. In particular, Defendant notes that Cuthbertson's past work included the preparation of financial budgets, agency-wide cost analysis, maintaining statistical reports and projecting, allocating and tracking the use of fiscal resources. *Id.* at 18; *see also* Ex. 12 [DE-23.7]. "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *See Evans*, 80 F.3d at 960.

3.      Plaintiff has demonstrated a genuine issue of material fact by offering sufficient circumstantial evidence of discrimination in the selection process.

Plaintiff contends the reasons proffered by Defendant for the selection of Cuthbertston are pretextual. Pl.'s Resp. at 6. A plaintiff may demonstrate pretext by showing the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." *Mereish,* 359 F.3d at 336 (quotation omitted). As evidence of discriminatory motive, Plaintiff focuses on the selection process, arguing there is a genuine issue of material fact as to the reason the Commission elected to repost the operations analyst position, ultimately resulting in the selection of Cuthbertson over Plaintiff. *Id.* Specifically, Plaintiff avers that the original applicant pool was expanded so that Defendant could avoid hiring

14

a black naturalized employee.[13] Pl.'s Resp. at 8 (stating "Parker and Carlson decided to re-advertise the position because they did not wish to promote Plaintiff due to his race and national origin").

In *Reeves*, the Supreme Court held that a plaintiff's claim that establishes a *prima facie* case and pretext may be sufficient to overcome summary judgment, noting that it was "permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." 530 U.S. at 147. The Court went on to state, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.* (citation omitted). Accordingly, if plaintiff demonstrates a *prima facie* case and pretext, his claim should be submitted to the jury unless "no rational factfinder could conclude that the action was discriminatory." *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000). The Court in *Reeves* expanded on this point:

> [c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the

---

[13] To the extent Plaintiff argues Defendant acted unlawfully by preselecting Cuthbertson for the analyst position, the court notes that while preselection "may establish that an employee was unfairly treated, it does not by itself prove [unlawful] discrimination." *Anderson*, 406 F.3d at 271 (citation omitted). Indeed, preselection of an employee for promotion "'is not sufficient evidence for jurors reasonably to conclude that the Defendant's explanation for hiring [another candidate] was pretext' when based on qualifications not prohibited by Title VII." *Weaks*, ___ F. Supp. 2d ___, 2011 U.S. Dist. LEXIS 7123, at *44, 2011 WL 208305, at *14 (quoting *Anderson*, 406 F.3d at 271) (alteration in original). Here, however, it is clear from the record that preselection of Cuthbertson could not have been the motive to repost the analyst position because Cuthbertson had not informed Defendant of his interest in returning to the Commission until <u>after</u> the decision to repost had been made. Parker Dep. 28:4-5, 22-23, 35:14-16 [DE-23.5]; Ex. 5 [DE-24.8].

15

employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

530 U.S at 148 (citation omitted).

This court must therefore analyze whether Plaintiff's proof rebutting the Defendant's evidence of a non-discriminatory reason presents only a "weak issue of fact," and if so, whether Defendant has shown "abundant and uncontroverted independent evidence that no discrimination ha[s] occurred." *Reeves*, 530 U.S. at 148; *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 649 (4th Cir. 2002) (noting *Reeves* provides two non-exhaustive examples entitling an employer to judgment as a matter of law, including whether a plaintiff has presented a weak issue of fact).

A plaintiff may demonstrate pretext by providing convincing circumstantial evidence undermining the credibility of the employer's stated reasons for not promoting him. *See Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). Several types of objective evidence may be potentially probative of pretext. For example, in the promotion context, a plaintiff may

> attempt to produce evidence that the defendant departed from its usual business procedure, or that the procedures by which a decision was made are suspect; plaintiffs may also point to evidence that there are no fixed or reasonably objective standards and procedures for evaluating the applicant. Evidence of a general atmosphere of discrimination may also be considered: proof of historically-limiting opportunity or harassment.

*Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679 (D. Md. 2000) (quoting *Warren v. Halstead Indus.*, 802 F.2d 746, 753 (4th Cir. 1986)) (internal citation omitted in original); *see also Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006) ("A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons.").

16

Here, Plaintiff advances four arguments in support his claim that the Commission's asserted reasons are pre-text for unlawful discrimination: (1) the Commission's willingness to hold the register and extend the application deadline so that Cuthbertson could submit a transcript proving he met the requisite educational requirements, a decision allegedly inconsistent with OSP policy; (2) the history of the Department with respect to the promotion of black employees; (3) an unresolved pay disparity between Plaintiff and a white co-worker; and (4) the Commission's decision to repost the position and not limiting the position to the initial applicant pool. Pl.'s Resp. at 13-15.

     i.    *Alleged violation of OSP policy*

Plaintiff contends the Commission's manipulation of the selection process provides circumstantial evidence of pretext. Pl.'s Resp. at 13. In particular, Plaintiff contends the Commission violated OSP policy by including Cuthbertson's name on the applicant register dated 2 May 2008 despite previously informing Cuthbertson that he was not eligible for the position (because Cuthbertson had not submitted the required transcript)[14] and holding the register for one month to allow Cuthbertson to submit his transcript. *Id.*; *see Johnson v. City of Charlotte*, 229 F. Supp. 2d 488, 495 (W.D.N.C. 2002) ("Deviation from regular procedures is a classic example of evidence used to show pretext." ) (citation omitted). In support of this allegation, Plaintiff relies on the following finding of fact in the Notice of Determination issued by the OAH:

> Testimonial evidence provided by OSP Managing Partner, Lynn Floyd, (White/America [sic]), revealed that once an applicant has been notified of their [sic] rejection for a position they [sic] should no longer be considered and therefore would not be referred by Human Resources or interviewed by the hiring manager. Ms.

---

[14] Sometime between April and May 2008, Cuthbertson received a letter in error from the Commission stating that he was not being considered for the operations analyst position. Ex. C, Def.'s Resp. Pl.'s Req. Admis. No. 3 [DE-31.4].

17

Floyd further testified that to do otherwise and allow applicants under this circumstance to move forward in the recruitment and selection process by granting them an interview would undermine the integrity of the OSP policy.

Ex. 57 ¶ 45 [DE-24.1].

Defendant argues first that no competent evidence has been presented showing that the Commission acted contrary to OSP policy. Def.'s Reply at 4. Defendant contends that the testimonial evidence upon which the above finding relies was not given under oath and that "it is not known what [Floyd] was asked that caused her to make those statements." *Id.*; Floyd Aff. ¶ 8. Defendant points out also that an applicant rejected for a position in error may move forward in the recruitment and selection process. *Id.*; Floyd Aff. ¶ 9. Relying on affidavit testimony by Floyd, Defendant argues it did not violate OSP policy in allowing Cuthbertson, who submitted a timely application, to provide a transcript after the closing date because "the job posting did not inform applicants of the requirement to submit a transcript and all applicants who did not submit a transcript are given the same opportunity to do so." Floyd Aff. ¶ 10; Ex. 24.8.

Plaintiff contends Defendant has failed to identify any other applicant who was allowed to submit a transcript for the operations analyst position subsequent to the application deadline. Pl.'s Surreply at 3. In particular, Plaintiff argues that had Defendant "properly maintained the position file" for the operations analyst position, the file would show no other applicants were afforded this opportunity.[15] *Id.* at 4.

Parties have a duty to preserve relevant information during the discovery process. Failure to do so may invoke the spoliation of evidence rule, which "allows the drawing of an adverse

---

[15] On 22 February 2010, counsel for Defendant informed Plaintiff's counsel that the position file for the operations analyst position had been lost and that this file may contain documents that were responsive to Plaintiff's discovery requests. Ex. 58 [DE-24.8].

18

inference against a party whose intentional conduct causes not just the destruction of evidence, . .
. but also against one who fails to preserve or produce evidence . . . ." *Hodge v. Wal-Mart Stores,*
*Inc.*, 360 F.3d 446, 450 (4th Cir. 2004). However, "such an inference cannot be drawn merely from
[the] negligent loss or destruction of evidence," as urged by Plaintiff. *Id.* (citation omitted). Rather,
"the inference requires a showing that the party knew the evidence was relevant to some issue at trial
and that [the] willful conduct resulted in its loss or destruction." *Id.* Indeed, "[a] party's failure to
produce evidence may . . . be explained satisfactorily. When a proponent cannot produce original
evidence of a fact because of loss or destruction of evidence, the court may permit proof by
secondary evidence." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995).

At the outset, the court observes first that in his initial discussion of the missing file, Plaintiff
contended that the file "would have contained the letter that was initially sent to Larry Cuthbertson
informing him that he was not being considered for the [] [o]perations [a]nalyst position." Pl.'s Resp.
10. The sending of this letter, however, is not disputed as Defendant admitted to mailing this letter
during discovery. Ex. C, Def.'s Resp. Pl.'s Req. Admis. No. 3 [DE-31.4]; Def.'s Reply at 4. In
Plaintiff's surreply, however, Plaintiff proffers a different reason for reliance on the position file. In
particular, Plaintiff contends he is entitled to "an inference . . . that the position file would show that
no other applicants were permitted the same opportunity as Cuthbertston to submit transcripts after
the application deadline." Pl.'s Surreply at 4.

The court does not find Plaintiff is entitled to an adverse inference as to the position file.
Cuthbertson clearly had the requisite educational background in light of the fact he held the identical
position at issue from 2002 through February 2008. *See* Ex. 12 (Cuthbertson's application for

19

employment) [DE-23.7]. Cuthbertson timely applied for the position and only sought his transcript

when Defendant advised him that his personnel file, which contained evidence of his educational

background, had been transferred to the DMV. Williams Dep. 20:24-25 [DE-24.5], 21:1-6 [DE-

24.5]. Of course, at the time of Cuthbertson's application, he remained an employee with DMV and

thus Defendant did not have access to the file. Next, Defendant proffered secondary evidence in the

form of deposition testimony by Williams, an HR employee who had seen the file. *Id.* 33:11-21.

Furthermore, Floyd explained in affidavit testimony that any applicant who had timely submitted an

application would have been afforded an opportunity to submit a transcript. Floyd Aff. ¶¶ 1, 10.

Accordingly, the missing file does not have sufficient "probative force to reflect a genuine issue of

material fact." *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988).

  ii.  *History of discrimination*

  Next, Plaintiff contends the history of the Department with respect to the promotion of black

employees provides circumstantial evidence of pretext. Pl.'s Resp. at 8, 14. In support of this

allegation, Plaintiff relies exclusively on comments made by two employees. *Id.* at 9. First, Plaintiff

cites deposition testimony by Linda Perry (black), a non-managerial Department employee, who

claimed that Sue Boyette (white), a secretary for the former director of the Department, told Perry

that "black people were not hired to be budget analysts."[16] Perry Dep. 19:13, 24-25, 20:4-5, 7 [DE-

24.6]. Second, Plaintiff cites the deposition testimony by Gloria Avent-Kindred (black), accounting

supervisor in the Department, who stated that white employees "get a little more leeway" than black

employees. Avent-Kindred Dep. 34:7-9, 35:7-18 [DE-24.7]. Plaintiff notes also Avent-Kindred's

---

[16] Perry testified that she had unsuccessfully applied for the operations analyst position on three separate occasions. Perry Dep. 9:11-13 [DE-24.6].

testimony that she believes Plaintiff's national origin affects the manner in which he is perceived in the Department. Pl.'s Resp. at 9; Avent-Kindred Dep. 34:15-25.

As Defendant points out, however, Perry is a non-managerial employee and her statement does not constitute an admission by Defendant under Federal Rule of Evidence 801(d)(2); rather her statement is inadmissible hearsay and inappropriate for purposes of summary judgment. *See Schafer v. Maryland Dep't of Health & Mental Hygiene*, 359 Fed. Appx. 385, 389 n.2 (4th Cir. Dec. 30, 2009); *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) (holding "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment"). Even assuming the hearsay testimony of Perry and Avent-Kindred would be admissible at trial, the alleged statements fall into the category of "stray remarks" as Perry and Avent-Kindred are unconnected with the decision makers. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) ("Stray remarks in the workplace . . . cannot justify requiring the employer to prove that its . . . promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers or statements by decisionmakers unrelated to the decisional process itself suffice to satisfy the plaintiff's burden in this regard."); *see Hill*, 354 F.3d at 286 (citing *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 678 (7th Cir. 2002) ("noting that the pertinent inquiry is whether the decisionmaker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria")).

    iii.    *Pay disparity*

Next, Plaintiff claims "his own experiences with disparate and discriminatory pay while employed" with the Commission constitute further evidence of discrimination. Pl.'s Resp. at 15. In

particular, Plaintiff contends Carlson's failure to remedy a pay disparity between Plaintiff and Commission employee Melanie Blalock ("Blalock"), a white native-born American, provides circumstantial evidence of pretext. *Id.* at 9-10.

In December 2005, Blalock was promoted to the position of administrative assistant, *see* Carlson Supplemental Aff. ¶ 4, the same position held by Plaintiff since 2000. Nwaebube Aff. ¶ 11. As a result of the promotion, Blalock, who had only a high school diploma, was paid a salary that was approximately $3,000 greater than the salary paid to Plaintiff, who held advanced degrees. *Id.* In 2006, Plaintiff contacted Carlson regarding the pay disparity and also contacted Harry Payne ("Payne"), then chairman of the Commission, who allegedly advised Plaintiff that he would approve a pay increase upon Carlson's request. Nwaebube Aff. ¶¶ 11-12. However, Carlson never initiated such a request. *Id.*

Defendant concedes that as a result of Blalock's salary increase, her salary exceeded that of Plaintiff, who held the same job classification as Blalock. Def.'s Reply at 6; Carlson Supplemental Aff. ¶ 4; Exs. 61 & 62 [DE-31.6]. However, in affidavit testimony, Carlson explained it is not uncommon for pay disparities to exist within the same job classification and that such disparities "are not limited to any particular racial group or to employees of any particular national origin." Carlson Supplemental Aff. ¶ 9. To adjust for such disparities, in March 1997, the Commission issued an in-range salary adjustment policy to, *inter alia*, establish equitable salary relationships. *Id.* ¶ 2; Ex. 63 [DE-31.6]. As a result of this policy, the Commission enacted in-range salary adjustments in 1999, 2001 and 2005.[17] Carlson Supplemental Aff. ¶ 6. However, by the time Plaintiff sought a pay

---

[17] In 2005, in-range salary adjustments were approved for twelve of the thirty Department employees, including Plaintiff but not Blalock. Carlson Supplemental Aff. ¶ 6. Blalock received an in-range salary adjustment in 1999. *Id.*

22

adjustment, Payne had already issued Executive Bulletin No. 08(06) ("the Bulletin"), dated 16 November 2006, wherein he advised that "[i]n-range salary adjustments [were] suspended until further notice." Payne explained the reason for this suspension was due to the Commission's implementation of a new pay system that would align the Commission's salaries "with market [salaries] to promote equity and improve recruitment." Ex. 65 [DE-31.6]; *see also* Carlson Supplemental Aff. ¶ 7. In light of the policy outlined in the Bulletin, Carlson and Payne agreed that approving a pay adjustment for Plaintiff would be a violation of the policy. Carlson Supplemental Aff. ¶ 8. Also, in affidavit testimony, Carlson stated that "giving the plaintiff another pay adjustment [in 2006], when he had received [a 5% in-range salary adjustment based on equity in 2005] would have been inequitable considering the employees in [the Department] who had not received any [i]n-[r]ange pay adjustments." *Id.*

Evidence of an employer's past treatment of an employee may constitute evidence of pretext. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 188 (1989) (explaining a plaintiff could show an employer has not offered the true reason for its employment decision by presenting evidence of the employer's past treatment of the employee); *see also McDonnell Douglas Corp.*, 411 U.S. at 804 (explaining "[o]ther evidence that may be relevant to any showing of pretext includes facts as to the [employer's] treatment of [the employee] during his prior term of employment"). Here, it is unclear how the decision to not remedy a pay disparity between Plaintiff and a white employee demonstrates the Commission's articulated reason for reposting the position was pretextual. The Commissioner has provided evidence that any in-range pay adjustments were forbidden while a new pay system was being implemented. Furthermore, the Commissioner explained that prior to the release of the

23

Bulletin, Plaintiff received an in-range pay adjustment the previous year. Finally, in affidavit testimony, Carlson explained pay disparities, which are not uncommon within the Department or the Commission, are not limited to a particular racial group or national origin. Accordingly, the past treatment of Plaintiff is not sufficiently compelling to dictate a finding of pretext.

   iv.   *The Commission's decision to repost the position*

Finally, Defendant contends that it made the decision to repost the position in order to expand the applicant pool. Def.'s Mem. at 5. Defendant relies on the testimony of Parker, who stated that none of the initial applicants "ha[d] substantial hands-on budgeting experience or analysis experience," and only one applicant had "WIA and Trade knowledge." Parker Dep. 26:18-25, 27:1-2, 14-19 [DE-23.5]. Accordingly, Parker and Carlson made the decision to repost the position. Parker Dep. 28:22-23 [DE-23.5].

Plaintiff contends that the explanation proffered by the Commission – to expand the applicant pool, as stated by Parker in deposition testimony – is false. Plaintiff relies on a statement made by Carlson regarding the reason to repost the position which conflicts with the Commission's claimed rationale. Parker Dep. 28:6-16 [DE-23.5]. In particular, during a 23 March 2008 meeting between Carlson and Plaintiff, Carlson informed Plaintiff that the operations analyst position would be readvertised because Carlson "had been busy with BEACON[18] and had not had time to conduct interviews." Plaintiff alleges further that during the March 2008 meeting, Carlson never mentioned a desire to expand the applicant pool. Pl.'s Resp. at 7, Nwaebube Aff. ¶ 6. Plaintiff contends the inconsistency between Carlson's statement and Parker's deposition testimony constitutes sufficient

---

[18] In March 2008, the Commission was transitioning to a new payroll system entitled "the BEACON HR/Payroll System." Ex. 60 [DE-31.6].

evidence of falsity for a jury to conclude that Parker's explanation was made to cover up a discriminatory purpose. Pl.'s Resp. at 14.

Defendant contends that Parker, Plaintiff's supervisor, was the hiring manager (not Carlson) and that Plaintiff has submitted no evidence that Parker gave a reason for the readvertisement conflicting with that of Defendant.[19] Def.'s Reply at 3, Ex. 57 ¶ 13. In response, Plaintiff observes that neither in Carlson's affidavit nor his supplemental affidavit does Carlson deny telling Plaintiff that the position was readvertised because Carlson was busy with BEACON. Pl.'s Surreply at 2. Plaintiff notes further that neither of Carlson's affidavits explains why the operations analyst position was readvertised despite Carlson's involvement in the decision to re-advertise the position. Pl.'s

---

[19] Prior to addressing Parker's role as hiring manager, Defendant asserts that Plaintiff's own statements regarding his conversations with Carlson are inconsistent, relying on Plaintiff's statements made to the EEOC and during deposition testimony in the instant matter. Def.'s Reply at 2-3. Accordingly, Defendant argues Plaintiff's "contentions of what Carlson told him are not clear and are not sufficient to contradict the reason the Commissioner proffered for the re-advertisement." *Id.* at 3.

With respect to Plaintiff's EEOC Charge of Discrimination ("EEOC charge"), Defendant relies on the statement wherein Plaintiff stated that "[i]n early May 2008, [Carlson] . . . told [him] that [he] was among those who were highly qualified for the position and he had planned on interviewing [him] for the position the first time it was advertised but [Carlson] got busy with another project and so [Carlson] had to re-advertised [sic] the job again." Def.'s Reply at 2 (citing Ex. 59 [DE-31.6 at 3]). As Plaintiff clarified via supplemental affidavit, Plaintiff "was referring to BEACON when [Plaintiff] stated in his EEOC charge that Carlson told [Plaintiff] he was busy with another project." Nwaebube Supplemental Aff. ¶ 3; Pl.'s Surreply at 2. Accordingly, the court does not discern a conflict between Plaintiff's statement in his EEOC charge regarding his May 2008 conversation with Carlson and Plaintiff's summary of his March 2008 meeting with Carlson.

With respect to deposition testimony, Defendant relies on Plaintiff's admission that Carlson told Plaintiff that the job was reposted "because [the Commission] [was] seeking for [sic] best qualified candidate." Def.'s Reply at 2-3; Nwaebube Dep. 99:9-11 [DE-31.5]. As Plaintiff points out, however, the deposition transcript indicates that Plaintiff was testifying as to a conversation that occurred <u>after</u> 26 June 2008. Pl.'s Surreply at 2; Nwaebube Dep. 98:10-20 [DE-32.2]. Accordingly, the court finds that Plaintiff's statements as to his March and May 2008 conversations with Carlson are consistent.

Surreply at 2. Accordingly, Plaintiff states it can be inferred that Defendant's explanation for readvertising the position is pretextual.

Finally, Defendant contends Carlson was under no obligation to explain "each and every reason the position was being readvertised," and, for the first time in its reply brief, Defendant asserts that work on BEACON "may also have been a factor [in the reposting decision], in some way." Def.'s Reply at 3. To that end, the evidence shows that on 15 January 2008, all Commission employees were sent an email entitled "Moratorium on Personnel Actions," which explained effective 1 April 2008, the Commission would begin using "the BEACON HR/Payroll System." Ex. 60 [DE-31.6]. The email stated further that "[i]n compliance with the mandatory BEACON transition period there will be no personnel actions processed from February 15, 2008 - April 7, 2008." *Id.* Noting the operations analyst position was readvertised with an application closing date of 8 April 2008, Defendant states, "If nothing more, work on BEACON affected the date the readvertisement was posted." Def.'s Reply at 3.

Whether Carlson had a duty to Plaintiff to explain the reasons for reposting the position is misplaced. Carlson is the Director of Finance and Budget and was directly involved in the hiring process, conferring with Parker in the decision to repost the analyst position.[20] Indeed, it is the employer who is in the best position to offer reasons for its employment decisions. *Reeves*, 530 U.S. at 147. As such, Carlson's statements as to the reason for reposting the position are certainly probative of pretext.

Here, the record shows that Carlson and Parker decided to reopen the applicant pool and

---

[20] Defendant's attempt to distance Carlson from the hiring process is of no moment. A reasonable inference may easily be drawn from the evidence that Carlson played an active role in the hiring process.

26

Carlson's proffered reasons for doing so conflict with those offered by Parker. Defendant's most recent assertion that Carlson's involvement with the BEACON project may have in fact been a factor in the decision to repost the position and seek new applicants does not reconcile Carlson's explanation with Parker's. In particular, Defendant has failed to explain how Carlson's work on the BEACON project necessitated the reopening of the applicant pool. Defendant has offered a memorandum advising that no personnel actions were undertaken during the transition period to BEACON but leaves it to the court to determine its effect on the original applicant pool, perhaps to infer that the transition period nullified the initial applicant pool and required that the Commission restart the hiring process. Such evidence has not been shown to the court and such a scenario certainly conflicts with Parker's reasons that the analyst position was reposted to search for better qualified job candidates.[21]

Defendant's proffered reason for reposting the position – to expand the applicant pool – is not conclusive and Defendant has failed to set forth "abundant and uncontroverted independent evidence that no discrimination occurred." *See Reeves*, 450 U.S. at 148. While Defendant has presented strong evidence that Cuthbertson was ultimately selected on his qualifications, a rational juror could find that the decision to readvertise the analysis position, thereby allowing Cuthbertson's

---

[21] Indeed, Defendant's inconsistency at this late juncture undercuts its position on summary judgment. The Fourth Circuit has held that an employer's failure to offer a reason for its decision until long after the action is evidence of pretext. *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001) ("Moreover, a factfinder could infer from the late appearance of [defendant's] current justification that it is a post-hoc rationale, not a legitimate explanation for [defendant's] decision not to hire [plaintiff]."); *Dennis*, 290 F.3d at 647 ("The fact that an employer has offered inconsistent post-hoc explanations for its employment decisions is probative of pretext."); *see also Murray v. AKIMA Corp.*, No. 4:07-CV-175-FL, 2009 U.S. Dist. LEXIS 20198, at *22, 2009 WL 674395, at *7 (E.D.N.C. Mar. 12, 2009) (noting that "where the explanation is offered only through defense counsel and not the actual decision-maker, the inference of pretext is even stronger.").

application, was discriminatory. In other words, the evidence in this case is not sufficient to compel a rational juror weighing credibility of the testimony to find there was no discrimination against Plaintiff. To grant summary judgment under these circumstances "would be to intrude on the jury function by substituting [the Court's] own judgment for that of the finder of fact." *Dennis*, 290 F.3d at 649-50. For the reasons above, this court concludes that Plaintiff has demonstrated that a genuine factual dispute exists as to whether the proffered reason for the Plaintiff's non-selection was false.[22] *See McClamb v. Rubin*, 932 F. Supp. 706, 715 (M.D.N.C.1996) ("At the summary judgment stage . . . the plaintiff can avoid summary judgment by showing merely that the employer's explanations are pretextual or that a genuine factual dispute exists concerning the defendant's proffered reasons.").

## VI.   CONCLUSION

For the reasons stated above, this court RECOMMENDS that Defendant's motion for summary judgment be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

---

[22] Because this court has found a genuine issue of material fact utilizing the *McDonnell Douglas* burden shifting analysis, this court does not address Plaintiff's claims under the mixed-motive framework.

28

This, the 13th day of May, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge

29